A93A2023. FITZGERALD RAILCAR SERVICES et al.
v. STEVENS.
(441 SE2d 91)

COOPER, Judge.

Donnell Stevens was employed by Fitzgerald Railcar Services as a blaster. His duties involved removing paint from railroad cars and the heavy metal gates attached to the bottom of the cars. Stevens alleged that he was injured on February 20, 1991 while moving a 100-pound railcar gate. While the pain from the incident did not cause him to stop working, Stevens contended that he woke up the next morning with numbness down his left side. Stevens claimed he notified his supervisor of his injury three days after the incident, upon the supervisor's return from vacation. However, the supervisor did not recall ever being informed of Stevens' injury and never made an injury report. In late March, the supervisor noticed Stevens was favoring one side and learned Stevens was experiencing dizziness and numbness in his left leg. As a result, Stevens was assigned tasks which did not require as much heavy lifting and climbing. Stevens contended he still was troubled by the numbness in his leg and had great difficulty moving around. He continued to work until April 6, 1991. On April 8, Stevens' wife notified the general manager that Stevens suffered a mild stroke, and thereafter, Stevens' treatment was covered by the employer's group health insurance plan.

Stevens was admitted to the hospital with severe left side numb-

ness and weakness which resulted in impairment of his left side and difficulty in walking. A myelogram, performed by Dr. Domenic Esposito, revealed compression lesions at levels C5-6 and C6-7 in his neck which were causing pressure on his spinal cord. Dr. Esposito performed an anterior cervical diskectomy and an interbody fusion at the C5-6 and C6-7 levels and discovered at both levels significant arthritic bony overgrowth. Dr. Esposito testified that the bony overgrowth was worse at the C5-6 level and opined that it was not caused by one specific trauma but developed gradually over time. At the C6-7 level, Dr. Esposito discovered a soft disk herniation which he indicated could have resulted from routine, daily activities or trauma. Dr. Esposito explained that Stevens' problems were more severe because his spinal canal was more narrow than usual.

After the surgery, Stevens was still considered severely debilitated, having difficulty walking and experiencing weakness, spasticity and tightness in his left-side extremities. On or about June 27, 1991, Stevens notified the employer of his intention to seek workers' compensation benefits based on an alleged February 20th work-related injury. Because there was no record of any accident or injury to Stevens on that date and the employer had the impression that Stevens was on disability leave due to a mild stroke, the claim was controverted. The ALJ found that Stevens failed to show that he suffered an injury at work on February 20, 1991 and that he notified his supervisor of an injury on that date. Upon a de novo consideration of all the evidence, including a transcript of the hearing before the ALJ, the full board adopted the ALJ's findings of fact and conclusions of law, only correcting the ALJ's finding that Stevens had only recently begun to work for the employer in February 1991. On appeal in the superior court, Stevens contended the ALJ's award contained several grossly misstated facts. The superior court agreed, finding that the award of the ALJ was made without the benefit of a transcript seven months after the hearing. Presuming that the full board's award may have been influenced by the ALJ's erroneous findings, the case was remanded to the full board for further consideration under a correct finding of facts. We granted the employer and its insurer's application for discretionary appeal, and this appeal followed.

Appellants enumerate as error the superior court's remand to the full board and the court's failure to apply the "any evidence" rule. Relying on *Aetna Ins. Co. v. Jones*, 125 Ga. App. 471 (188 SE2d 180) (1972), appellee argues that several specific misstatements in the ALJ's award justified the remand. In *Aetna*, this court recognized that "a misstatement of significant testimony will be ground for referral back to the board of an award otherwise supported by evidence where it is possible that a proper understanding of the evidence might have caused the finder of fact to reach a different conclusion." Id. at

471. First, appellee took issue with the ALJ's finding that "none of the treating *physicians* had any reference in their notes that this was a workers' compensation claim or that claimant had been injured on the job." (Emphasis supplied.) Appellee contends this finding is contrary to the evidence admitted at the hearing before the ALJ which included a statement by a Dr. Bill Day in which Dr. Day stated that appellee was treated in his office on three occasions and that appellee stated that he injured his back when he picked up a heavy gate at work. We do not find that this evidence contradicts the ALJ's finding because Dr. Day's statement indicates that he is a chiropractor, not a "physician" under the laws of this state. *Glover v. Southern Bell Tel. &c. Co.*, 132 Ga. App. 74 (1) (207 SE2d 584) (1974). Accordingly, Dr. Day was not one of appellee's "treating physicians."

Appellee also contended that the ALJ mischaracterized Dr. Esposito's testimony in finding that appellee's medicals did not support appellee's avowal that he told his treating physician about a work-related injury. Appellee specifically takes issue with the ALJ's conclusion that Dr. Esposito would have interrogated appellee regarding his work history if appellee had indicated that the injury was work related. However, Dr. Esposito's deposition shows that on redirect examination, Dr. Esposito testified that appellee claimed only that he woke up with a problem; that appellee never mentioned any trauma, accident or a pulling or a straining; and that had appellee done so, Dr. Esposito would have inquired further about how the symptoms started, what appellee was doing at the time and whether there was any particular event which might have caused the symptoms. Thus, the ALJ's conclusion is consistent with the evidence of record.

Next, appellee argues that because he never contended that he gave his supervisor notice of his injury *on* February 20, 1991 the ALJ erred in finding that he failed to show that he gave notice of the injury to his supervisor *on* that date. Instead, appellee maintained that because the supervisor was on vacation on the 20th, appellee notified him upon his return, three days after the incident. While it is true that the ALJ specifically stated in its award that appellee failed to notify his supervisor of an injury *on* February 20, 1991 and that such was never appellee's contention, we do not find that this misstatement erroneously influenced the award because that statement was not the extent of the ALJ's findings on the issue of notice. The ALJ went on to find that "[i]t is clear that a back injury would have been reported by the supervisor if he was informed of one." The ALJ found and the evidence shows that appellee was fully aware of the appropriate notification procedure for work-related injuries. On February 19, the day before the alleged injury, appellee attended a safety meeting with his supervisors in which the unusual frequency of his previous injuries was discussed. It appears that earlier in the same month, in

one particular week, appellee was involved in three separate accidents on the job. Appellee notified his supervisor of each of the accidents, and as a result, treatment was provided as needed. Thus, the ALJ concluded that if appellee sustained an injury on February 20, 1991, it would have been reported like the other recent accidents. Moreover, the record likewise reveals that appellee's superiors did not recall appellee ever giving notice of a work-related injury allegedly sustained on or about February 20. His immediate supervisor testified that he began to notice appellee favoring one side one month after the date alleged by appellee and that appellee's condition was then discussed and appellee was subsequently assigned to less strenuous duties. However, appellee never attributed his problems to a specific injury on the job. Finally, when appellee ceased working on April 6, his wife reported that he suffered a mild stroke, and appellee subsequently filed under the employer's group health insurance plan, not for workers' compensation benefits. Therefore, the misstatement is immaterial (*Gates v. Aetna Ins. Co.*, 128 Ga. App. 546, 547 (197 SE2d 381) (1973)) inasmuch as the evidence supports a finding that appellee neither notified his superiors of an injury *on* February 20, 1991 nor at any other time. See *Container Corp. of America v. Gray*, 205 Ga. App. 520 (422 SE2d 561) (1992).

Finally, appellee contends that the ALJ erred in finding that the evidence was insufficient to carry his burden of proof that trauma sustained on the job was sufficient to cause the injury diagnosed by Dr. Esposito. Appellee essentially argues that the ALJ's finding is in contradiction to Dr. Esposito's response to a hypothetical question in which the physician opined that under circumstances similar to the instant case there was a good possibility that the alleged trauma and the subsequent injury were related. In its award, the ALJ did acknowledge that the injury at the C6-7 level could have been the result of a single incident of trauma; however, the ALJ concluded that appellee failed to carry his burden of proof that the trauma did in fact occur at work because the evidence otherwise indicated that appellee did not consider a date and time of the incident until over 26 weeks after the alleged event. Therefore, there was no misstatement of the evidence which could have misled the board to justify a remand to the board.

Based on the foregoing, the superior court erred in recommitting the case to the Board of Workers' Compensation for further proceedings.

*Judgment reversed. Beasley, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 15, 1994.

*Rick F. Ellis, Jr.*, for appellants.
*William V. Evans*, for appellee.